1  Benjamin Heikali (SBN 307466)
2  **FARUQI & FARUQI, LLP**
   10866 Wilshire Boulevard, Suite 1470
3  Los Angeles, CA 90024
   Telephone: (424) 256-2884
4  Facsimile: (424) 256-2885
   E-mail:  bheikali@faruqilaw.com

5  [Additional Captions on Signature Page]

6  *Attorney for Plaintiff Michael Byrne*

7

8                    **UNITED STATES DISTRICT COURT**
9                    **NORTHERN DISTRICT OF CALIFORNIA**

10

11 MICHAEL BYRNE, Individually and on Behalf
   of All Others Similarly Situated,

12               Plaintiff,                    Case No.: 3:18-cv-02926

13        vs.                                  **CLASS ACTION COMPLAINT FOR**
                                               **VIOLATIONS OF SECTIONS 14(A)**
14 VERIFONE SYSTEMS, INC., ALEX WAY            **AND 20(A) OF THE SECURITIES**
   HART, ROBERT W. ALSPAUGH,                   **EXCHANGE ACT OF 1934**
15 JONATHAN I. SCHWARTZ, LARRY ALLAN
   KLANE, ROBERT BRADSHAW HENSKE,
16 RONALD D. BLACK, KAREN A. AUSTIN,           **JURY TRIAL DEMANDED**
   PAUL S. GALANT, JANE J. THOMPSON, and
17 ROWAN M. TROLLOPE,

18               Defendants.

19

20

21

22

23

24

25

26

27

28

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)**
**OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff Michael Byrne ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.   This action is brought as a class action by Plaintiff on behalf of himself and the other public holders of the common stock of Verifone Systems, Inc. ("Verifone" or the "Company") against the Company and the members of the Company's board of directors (collectively, the "Board" or "Individual Defendants," and, together with Verifone, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), SEC Rule 14a-9, 17 C.F.R. 240.14a-9, and Regulation G, 17 C.F.R. § 244.100 in connection with the proposed merger (the "Proposed Merger") between Verifone and an investor group led by Francisco Partners and including British Columbia Investment Management Corporation ("BCI").

2.   On April 9, 2018, the Board caused the Company to enter into an agreement and plan of merger ("Merger Agreement"), pursuant to which the Company's shareholders stand to receive $23.04 in cash for each share of Verifone stock they own (the "Merger Consideration"), a transaction valued at $3.4 billion.

3.   On May 7, 2018, in order to convince Verifone shareholders to vote in favor of the Proposed Merger, the Board authorized the filing of a materially incomplete and misleading definitive Proxy Statement on a Schedule 14A (the "Proxy") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.   While Defendants are touting the fairness of the Merger Consideration to the Company's shareholders in the Proxy, they have failed to disclose certain material information in violation of Regulation G (17 C.F.R. § 244.100) and SEC Rule 14a-9 (17 C.F.R. 240.14a-9), each as required by Section 14(a) of the Exchange Act.

5.   In particular, the Proxy contains materially incomplete and misleading information concerning: (i) management's financial projections for the Company that were relied upon by the

1

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

Board in recommending the Company's shareholders vote in favor of the Proposed Merger; and (ii) the sale process leading up to the decision to recommend the Proposed Merger.

6.      It is imperative that the material information that has been omitted from the Proxy is disclosed prior to the forthcoming stockholder vote in order to allow the Company's stockholders to make an informed decision regarding the Proposed Merger.

7.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, based on Defendants' violation of (i) Regulation G (17 C.F.R. § 244.100) and (ii) Rule 14a-9 (17 C.F.R. 240.14a-9). Plaintiff seeks to enjoin Defendants from holding the stockholders vote on the Proposed Merger and taking any steps to consummate the Proposed Merger unless, and until, the material information discussed below is disclosed to Verifone stockholders sufficiently in advance of the vote on the Proposed Merger or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

9.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

10.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Verifone is headquartered in this District.

## PARTIES

11.     Plaintiff is, and at all relevant times has been, a holder of Verifone common stock.

12.     Defendant Verifone is incorporated in Delaware and maintains its principal

2

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)
OF THE SECURITIES EXCHANGE ACT OF 1934**

1  executive offices at 88 West Plumeria Drive, San Jose, California 95134.   The Company's

2  common stock trades on the NYSE under the ticker symbol "PAY."

3       13.   Individual Defendant Alex Way Hart has served as a director of the Company since

4  2006 and as Chairman of the Board since June 2014.

5       14.   Individual Defendant Robert W. Alspaugh has served as a director of the Company

6  since 2008.

7       15.   Individual Defendant Jonathan I. Schwartz has served as a director of the Company

8  since 2014.

9       16.   Individual Defendant Larry Allan Klane has served as a director of the Company

10  since December 2017.

11       17.   Individual Defendant Robert Bradshaw Henske has served as a director of the

12  Company since 2005.

13       18.   Individual Defendant Ronald D. Black has served as a director of the Company

14  since December 2017.

15       19.   Individual Defendant Karen A. Austin has served as a director of the Company

16  since 2014.

17       20.   Individual Defendant Paul S. Galant has served as Chief Executive Officer and as

18  a director of the Company since 2013.

19       21.   Individual Defendant Jane J. Thompson has served as a director of the Company

20  since 2014.

21       22.   Individual Defendant Rowan M. Trollope has served as a director of the Company

22  since May 2017.

23       23.   The Individual Defendants referred to in paragraphs 13-22 are collectively referred

24  to herein as the "Individual Defendants" and/or the "Board."

25                      **CLASS ACTION ALLEGATIONS**

26       24.   Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself

27  and the other public shareholders of Verifone (the "Class").   Excluded from the Class are

28

3

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)
OF THE SECURITIES EXCHANGE ACT OF 1934**

1  Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated

2  with any Defendant.

3        25.    This action is properly maintainable as a class action because:

4        a.    The Class is so numerous that joinder of all members is impracticable.  As of

5  April 30, 2018, there were approximately 117,353,265 shares of Verifone common stock

6  outstanding, held by hundreds of individuals and entities scattered throughout the country.

7  The actual number of public shareholders of Verifone will be ascertained through discovery;

8        b.    There are questions of law and fact that are common to the Class that

9  predominate over any questions affecting only individual members, including the following:

10           i)    whether Defendants disclosed material information that includes

11              non-GAAP financial measures without providing a reconciliation of

12              the same non-GAAP financial measures to their most directly

13              comparable GAAP equivalent in violation of Section 14(a) of the

14              Exchange Act;

15           ii)    whether Defendants have misrepresented or omitted material

16              information concerning the Proposed Merger in the Proxy in

17              violation of Section 14(a) of the Exchange Act;

18           iii)    whether the Individual Defendants have violated Section 20(a) of

19              the Exchange Act; and

20           iv)    whether Plaintiff and other members of the Class will suffer

21              irreparable harm if compelled to vote their shares regarding the

22              Proposed Merger based on the materially incomplete and misleading

23              Proxy.

24       c.    Plaintiff is an adequate representative of the Class, has retained competent

25 counsel experienced in litigation of this nature, and will fairly and adequately protect the

26 interests of the Class;

27

28

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)
OF THE SECURITIES EXCHANGE ACT OF 1934**

d.      Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.      The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f.      Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g.      A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

**The Proposed Merger**

26.      Verifone is a technology company which provides electronic payment transactions and value-added services at the point of sale to its global customer base, which include financial institutions, payment processors, and large retailers among others.

27.      On April 9, 2018, Verifone and Francisco Partners issued a press release announcing the Proposed Merger, which states in pertinent part:

> **SAN JOSE, Calif. and SAN FRANCISCO, Calif. – April 9, 2018 –** Verifone Systems, Inc. (NYSE: PAY) ("Verifone" or the "Company"), a world leader in payment and commerce solutions, and Francisco Partners, a leading technology-focused private equity firm, today announced that they have entered into a definitive agreement under which an investor group led by Francisco Partners and including British Columbia Investment Management Corporation ("BCI") will acquire Verifone for $23.04 per share in cash, representing a total consideration of approximately $3.4 billion, which includes Verifone's net debt.
>
> Under the terms of the agreement, Verifone stockholders will receive $23.04 in cash for each share of Verifone common stock held, representing a premium of approximately 54% to the Company's closing share price of $15.00 on April 9, 2018. The Verifone Board of Directors has unanimously approved the definitive agreement and recommends that Verifone stockholders vote in favor of the transaction. Upon completion of the transaction, Verifone will become a privately held company.

5

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)
OF THE SECURITIES EXCHANGE ACT OF 1934**

Paul Galant, Chief Executive Officer of Verifone, said, "We are pleased to reach this agreement with Francisco Partners. This transaction delivers significant cash value to our stockholders and provides compelling benefits for our clients. We believe this transaction reflects the progress we have made executing our transformation from a terminal sales company to a payments and commerce solutions provider. With Francisco Partners' resources, expertise and track-record growing global technology businesses, we are confident that we will be better positioned to serve the needs of our clients around the globe."

"Verifone continues to build compelling and impressive products and technology and has attractive long-term growth prospects," said Peter Christodoulo, Partner at Francisco Partners. "We are excited to become investors and stewards of this important platform in the global payments and commerce ecosystem."

"Verifone's transformation from a hardware provider to a best-in-class payments and commerce solutions provider is just beginning," added Jason Brein, Partner at Francisco Partners. "We look forward to supporting the company as it continues its evolution."

"This investment builds on the strength of our financial technology, systems and software franchises," commented Dipanjan "DJ" Deb, co-founder & CEO of Francisco Partners. "Verifone will receive the highest focus of Francisco Partners as we support its continued growth and transformation in an increasingly software-centric world."

The transaction is not subject to a financing condition and is expected to close during the third calendar quarter of 2018, subject to customary closing conditions, including receipt of stockholder and regulatory approvals. The merger agreement includes a "go-shop" period, which permits Verifone's Board and advisors to actively initiate, solicit, encourage, and potentially enter into negotiations with parties that make alternative acquisition proposals through May 24, 2018. There can be no assurance that this process will result in a superior proposal, and Verifone does not intend to disclose developments with respect to the solicitation process unless and until the Board makes a determination requiring further disclosure.

28.     The Merger Consideration appears inadequate in light of the Company's recent financial performance and prospects for future growth.  For instance, the Company has reported double-digit sales growth since 2014, positive EBITDA growth since 2015, and positive net income in 2016, the Company's first positive net income report.

29.     In sum, it appears that Verifone is well-positioned for financial growth, and that the Merger Consideration fails to adequately compensate the Company's shareholders.  It is imperative that Defendants disclose the material information they have omitted from the Proxy, discussed in detail below, so that the Company's shareholders can properly assess the fairness of the Merger Consideration for themselves and make an informed decision concerning whether or not to vote in favor of the Proposed Merger.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

**The Materially Incomplete and Misleading Proxy**

30.     On May 7, 2018, Defendants caused the Proxy to be filed with the SEC in connection with the Proposed Merger.  The Proxy solicits the Company's shareholders to vote in favor of the Proposed Merger.  Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents and/or omits both required and material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Merger, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*The Materiality of Financial Projections*

31.     A company's financial projections are material information a board relies on to determine whether to approve a merger transaction and recommend that shareholders vote to approve the transaction.  Here, the financial forecasts were relied on to approve the Merger Agreement and recommend the Proposed Merger to shareholders. The Proxy discloses that the financial projections above were prepared by the Company's management and provided "to the Board for purposes of evaluating the merger[.]"  Proxy at 40.

32.     When soliciting proxies from shareholders, a company must furnish the information found in Schedule 14A (codified as 17 C.F.R. § 240.14a-101).  Item 14 of Schedule 14A sets forth the information a company must disclose when soliciting proxies regarding mergers and acquisitions.  In regards to financial information, companies are required to disclose "financial information required by Article 11 of Regulation S-X[,]" which includes Item 10 of Regulation S-K.  *See* Item 14(7)(b)(11) of 17 C.F.R. § 240.14a-101.

33.     Under Item 10 of Regulation S-K, companies are encouraged to disclose "management's projections of future economic performance that have a reasonable basis and are presented in an appropriate format."  17 C.F.R. § 229.10(b).  Although the SEC recognizes the usefulness of disclosing projected financial metrics, the SEC cautions companies to "take care to

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)
OF THE SECURITIES EXCHANGE ACT OF 1934**

assure that the choice of items projected is not susceptible of misleading inferences through selective projection of only favorable items." *Id.*

34.     In order to facilitate investor understanding of the Company's financial projections, the SEC provides companies with certain factors "to be considered in formulating and disclosing such projections[,]" including:

> (i) When management chooses to include its projections in a Commission filing, ***the disclosures accompanying the projections should facilitate investor understanding of the basis for and limitations of projections.*** In this regard investors should be cautioned against attributing undue certainty to management's assessment, and the Commission believes that investors would be aided by a statement indicating management's intention regarding the furnishing of updated projections. ***The Commission also believes that investor understanding would be enhanced by disclosure of the assumptions which in management's opinion are most significant to the projections or are the key factors upon which the financial results of the enterprise depend and encourages disclosure of assumptions in a manner that will provide a framework for analysis of the projection.***
>
> (ii) Management also should consider whether disclosure of the accuracy or inaccuracy of previous projections would provide investors with important insights into the limitations of projections. In this regard, ***consideration should be given to presenting the projections in a format that will facilitate subsequent analysis of the reasons for differences between actual and forecast results.*** An important benefit may arise from the systematic analysis of variances between projected and actual results on a continuing basis, since such disclosure may highlight for investors the most significant risk and profit-sensitive areas in a business operation.

17 C.F.R. § 229.10(b)(3) (emphasis added).

35.     As discussed further below, the financial projections here do not provide Verifone's shareholders with a materially complete understanding of the assumptions and key factors, which shareholders would find material since the Board's recommendation that shareholders vote in favor of the Proposed Merger was based, in part, on the following:

> *Best Alternative for Maximizing Stockholder Value*.  The Board considered that the per share merger consideration was more favorable to the stockholders than the potential value that would reasonably be expected to result from other alternatives reasonably available to the Company, including the continued standalone operation of the Company as an independent public company, taking into account its strategic alternatives and financing plans on an ongoing basis, in light of a number of factors, including:
>
> • the Board's assessment of the Company's business, assets and prospects, its competitive position and historical and projected financial performance and the nature of the industries in which the

8

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)**
**OF THE SECURITIES EXCHANGE ACT OF 1934**

1   Company operates, including recent industry trends and changing
    competitive dynamics[]

2   Proxy at 36.

3   ***The Financial Projections are Materially Incomplete***

4   36.   The Proxy discloses certain financial projections for the Company on pages 41-42.

5   However, the Proxy fails to provide material information concerning the projections, which were

6   developed by the Company's management and relied upon by the Board in recommending that the

7   shareholders vote in favor of the Proposed Merger.  Proxy 41.

8   37.   Specifically, the Proxy provides values for non-GAAP measures:  (1) Non-GAAP

9   Net Revenue; (2) EBITDA; (3) Non-GAAP Net Income; (4) Non-GAAP EPS; (5) Adjusted

10  NOPAT; and (6) Unlevered Free Cash Flow ("UFCF"), but fails to provide line items or

11  reconciliation for any of these metrics.  Proxy 41.

12  38.   First, the Proxy defines Non-GAAP Net Revenue as "net revenues, excluding

13  amortization of step-down in deferred net revenue of acquired businesses, adjusted to exclude

14  divested businesses[,]" but never provides values for the line items nor a reconciliation to its most

15  comparable GAAP equivalent.  Proxy 41.

16  39.   Second, the Proxy discloses that EBITDA "is a non-GAAP financial measure

17  defined as earnings before interest, taxes, depreciation and amortization. EBITDA excludes the

18  amortization of step-down in deferred revenue (and associated costs of goods sold) at acquisition

19  of acquired businesses, amortization of purchased intangible assets, merger and acquisition related

20  charges and costs associated with litigation and other loss contingencies."  Proxy 42.  Nevertheless,

21  the Proxy does not provide the values of the line items nor a reconciliation to its most comparable

22  GAAP equivalent.  Proxy 42.

23  40.   Third, the Proxy discloses that Non-GAAP Net Income "excludes the amortization

24  of step-down in deferred revenue (and associated costs of goods sold) at acquisition of acquired

25  businesses, amortization of purchased intangible assets, merger and acquisition related charges

26  and costs associated with litigation and other loss contingencies."  Proxy 42.  The Proxy neither

27  provides the values of these line items nor provides a reconciliation to net income, its most

28

9

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)**
**OF THE SECURITIES EXCHANGE ACT OF 1934**

comparable GAAP equivalent.  Proxy 41, 42.

41.     Fourth, the Proxy provides values for "Non-GAAP EPS", but does not provide a definition, the line items used in its calculation, or a reconciliation to its most comparable GAAP equivalent.  Proxy 41-42.

42.     Fifth, the Proxy discloses that "[a]djusted NOPAT is a non-GAAP financial measure calculated as non-GAAP operating income (excluding the items described in the second sentence of footnote 3) subtracting (a) taxes and (b) other recurring cash expenses."  Proxy 42. The Proxy does not disclose the values of the line items or a reconciliation of the measure to its GAAP equivalent.  Proxy 41-42.

43.     Sixth, the Proxy discloses that UFCF "is a non-GAAP financial measure calculated as Adjusted NOPAT (as described above), adding depreciation and amortization, and subtracting (a) capital expenditures and (b) increases in net working capital. Unlevered free cash flow excludes stock based compensation expense and other non-cash items."  Proxy 42.  The Proxy does not disclose the values of the line items or a reconciliation of the measure to its GAAP equivalent. Proxy 41-42.

### The Financial Projections Violate Regulation G

44.     The SEC has acknowledged that potential "misleading inferences" are exacerbated when the disclosed information contains non-GAAP financial measures[1] and adopted Regulation G[2] "to ensure that investors and others are not misled by the use of non-GAAP financial measures."[3] More specifically, the company must disclose the most directly comparable GAAP financial measure **and** a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure

---

[1]     Non-GAAP financial measures are numerical measures of future financial performance that exclude amounts or are adjusted to effectively exclude amounts that are included in the most directly comparable GAAP measure. 17 C.F.R. §244.101(a)(1).

[2]     Item 10 of Regulations S-K and S-B were amended to reflect the requirements of Regulation G.

[3]     United States Securities and Exchange Commission, *Final Rule: Conditions for Use of Non-GAAP Financial Measures* (2002), *available at* https://www.sec.gov/rules/final/33-8176.htm.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

1    or measures calculated and presented in accordance with GAAP.  17 C.F.R. § 244.100.  This is

2    because the SEC believes "this reconciliation will help investors . . . to better evaluate the non-GAAP

3    financial measures . . . [and] more accurately evaluate companies' securities and, in turn, result in a

4    more accurate pricing of securities."[4]

5        45.    Moreover, the SEC has publicly stated that the use of non-GAAP financial

6    measures can be misleading.[5]    Former SEC Chairwoman Mary Jo White has stated that the

7    frequent use by publicly traded companies of unique company-specific non-GAAP financial

8    measures (as Verifone included in the Proxy here), implicates the centerpiece of the SEC's

9    disclosures regime:

10           In too many cases, the non-GAAP information, which is meant to supplement the
             GAAP information, has become the key message to investors, crowding out and
11           effectively supplanting the GAAP presentation.  Jim Schnurr, our Chief Accountant,
             Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I,
12           along with other members of the staff, have spoken out frequently about our concerns
             to raise the awareness of boards, management and investors.  And last month, the staff
13           issued guidance addressing a number of troublesome practices *which can make non-
             GAAP disclosures misleading*: the lack of equal or greater prominence for GAAP
14           measures; exclusion of normal, recurring cash operating expenses; individually
             tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash
15           per share data.  I strongly urge companies to carefully consider this guidance and
             revisit their approach to non-GAAP disclosures.  I also urge again, as I did last
16           December, that appropriate controls be considered and that audit committees carefully
             oversee their company's use of non-GAAP measures and disclosures.[6]
17

18       46.    Compliance with Regulation G is mandatory under Section 14(a), and non-

19   compliance constitutes a violation of Section 14(a).  Thus, in order to bring the Proxy into

20   compliance with Regulation G, Defendants must provide a reconciliation of the non-GAAP

21   financial measures to their respective most comparable GAAP financial measures.

22   _____

23   [4]    *Id.*
     [5]    *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures:  The SEC's
24   Evolving Views*, Harvard Law School Forum on Corporate Governance and Financial Regulation
     (June 24, 2016), https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-
25   secs-evolving-views/; Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into
     Profits*, N.Y. Times, Apr. 22, 2016, http://www.nytimes.com/2016/04/24/business/fantasy-math-
     is-helping-companies-spin-losses-into-profits.html?_r=0.
26   [6]    Mary Jo White, *Keynote Address, International Corporate Governance Network Annual
     Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-
27   GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-
     speech.html (emphasis added) (footnotes omitted).
28

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)
OF THE SECURITIES EXCHANGE ACT OF 1934**

***The Financial Projections are Materially Misleading and Violate SEC Rule 14a-9***

47.     In addition to the Proxy's violation of Regulation G, the lack of reconciliation, or at the very least the line items utilized in calculating the non-GAAP measures renders the financial projections disclosed materially misleading as shareholders are unable to understand the differences between the non-GAAP measures and their respective most comparable GAAP financial measures.

48.     Such projections are necessary to make the non-GAAP projections included in the Proxy not misleading.  Indeed, Defendants acknowledge the misleading nature of non-GAAP projections, as Verifone shareholders are cautioned:

> The Management Projections include "non-GAAP financial measures," which are financial measures that are not calculated in accordance with generally accepted accounting principles, or GAAP. These non-GAAP financial measures should not be viewed as a substitute for GAAP financial measures and may be different from non-GAAP financial measures used by other companies. Furthermore, there are limitations inherent in non-GAAP financial measures because they exclude items, including charges and credits, that are required to be included in a GAAP presentation.

Proxy 41.

49.     As such, in order to cure the materially misleading nature of the projections under SEC Rule 14a-9 as a result of the omitted information on pages 41-42, Defendants must provide a reconciliation table of the non-GAAP financial measures to the most comparable GAAP measures.

***The Background of the Merger Section is Materially Misleading***

50.     The Proxy discloses that the Company and certain interested parties entered into non-disclosures agreements ("NDA") in order to evaluate "a potential transaction between the parties." Proxy, 32.  The Proxy does provide any further information regarding these NDAs, and as a result, the Proxy is materially misleading.

51.     More specifically, the Company's shareholders are unable to determine whether the NDAs contain certain customary provisions such as standstill or "Don't Ask, Don't Waive" ("DADW").  Without further information regarding these NDAs, shareholders are unable to discern whether the Proposed Merger is in fact the best strategic alternative, or whether there is a better alternative that is currently prohibited from being made public.  As a result, the description

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)
OF THE SECURITIES EXCHANGE ACT OF 1934**

of the sale process and the NDAs is materially misleading as shareholders are unable to determine whether the two potential bidders are prohibited from making a topping bid.

52.     Further, this information is particularly material to the Company's shareholders in light of the thirty day go-shop period in which the Company may solicit other offers.  Proxy, 35. Without details regarding the restrictions set forth in the NDAs, shareholders are unable to determine whether the two most likely interested bidders were restricted from participating in the go-shop period.

53.     Finally, the Proxy discloses that the go-shop period began on April 9, 2018 and that "[s]ince the commencement of the go-shop period, representatives of Qatalyst Partners, on behalf of the Company, have been in contact with potential counterparties to initiate discussions regarding their potential interest in making an acquisition proposal."  Proxy, 35.  The Proxy provides no further information regarding these contacts despite the Proxy being filed on May 7, 2018.  By failing to provide further details about these contacts, shareholders are being materially misled regarding other potential alternatives to the Proposed Merger.  As such, shareholders must be provided with further information regarding Qatalyst's solicitation efforts.

54.     Clearly shareholders would find this information material since the Board's recommendation that shareholders vote in favor of the Proposed Merger was based, in part, on:

> *Best Alternative for Maximizing Stockholder Value*. The Board considered that the per share merger consideration was more favorable to the stockholders than the potential value that would reasonably be expected to result from other alternatives reasonably available to the Company, including the continued standalone operation of the Company as an independent public company, taking into account its strategic alternatives and financing plans on an ongoing basis . . . .

Proxy, 36.

55.     In sum, the Proxy independently violates both: (i) Regulation G, which requires a presentation and reconciliation of any non-GAAP financial measure to its most directly comparable GAAP equivalent; and (ii) Rule 14a-9, since the material omitted information renders certain statements, discussed above, materially incomplete and misleading.  As the Proxy independently contravenes the SEC rules and regulations, Defendants violated Section 14(a) and

13

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

Section 20(a) of the Exchange Act by filing the Proxy to garner votes in support of the Proposed Merger from Verifone shareholders.

56.     Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Merger, Plaintiff and the other members of the Class will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Merger, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act
and 17 C.F.R. § 244.100 Promulgated Thereunder)**

57.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

58.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

59.     As set forth above, the Proxy omits information required by SEC Regulation G, 17 C.F.R. § 244.100, which independently violates Section 14(a).  SEC Regulation G, among other things, requires an issuer that chooses to disclose a non-GAAP measure to provide a presentation of the "most directly comparable" GAAP measure, and a reconciliation "by schedule or other clearly understandable method" of the non-GAAP measure to the "most directly comparable" GAAP measure.  17 C.F.R. § 244.100(a).

60.     The failure to reconcile the numerous non-GAAP financial measures included in the Proxy violates Regulation G and constitutes a violation of Section 14(a).

14

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)
OF THE SECURITIES EXCHANGE ACT OF 1934**

## COUNT II

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act
and Rule 14a-9 Promulgated Thereunder)**

61.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

62.    SEC Rule 14a-9 prohibits the solicitation of shareholder votes in proxy communications that contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading[.]" 17 C.F.R. § 240.14a-9.

63.    Regulation G similarly prohibits the solicitation of shareholder votes by "mak[ing] public a non-GAAP financial measure that, taken together with the information accompanying that measure . . . contains an untrue statement of a material fact or *omits to state a material fact necessary in order to make the presentation of the non-GAAP financial measure . . . not misleading.*"  17 C.F.R. § 244.100(b) (emphasis added).

64.    Defendants have issued the Proxy with the intention of soliciting shareholder support for the Proposed Merger.  Each of the Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things, the financial projections for the Company.

65.    In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

66.    The Individual Defendants knew or were negligent in not knowing that the Proxy

15

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)
OF THE SECURITIES EXCHANGE ACT OF 1934**

is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger.

67.    The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.

68.    The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

69.    Verifone is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

70.    The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Merger.

71.    Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT III

**(Against the Individual Defendants for Violations
of Section 20(a) of the Exchange Act)**

72.    Plaintiff incorporates each and every allegation set forth above as if fully set forth

16

herein.

73.     The Individual Defendants acted as controlling persons of Verifone within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Verifone, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

74.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

75.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Merger.  They were thus directly involved in preparing the Proxy.

76.     In addition, as described herein and set forth at length in the Proxy, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

77.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

78.     As set forth above, the Individual Defendants had the ability to exercise control

17

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

1  over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by

2  their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these

3  Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate

4  result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

5       79.     Plaintiff and the Class have no adequate remedy at law.  Only through the exercise

6  of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate

7  and irreparable injury that Defendants' actions threaten to inflict.

8                                    **PRAYER FOR RELIEF**

9       **WHEREFORE**, Plaintiff prays for judgment and relief as follows:

10      A.      Declaring that this action is properly maintainable as a Class Action and certifying

11 Plaintiff as Class Representative and his counsel as Class Counsel;

12      B.      Enjoining Defendants and all persons acting in concert with them from proceeding

13 with the shareholder vote on the Proposed Merger or consummating the Proposed Merger, unless and

14 until the Company discloses the material information discussed above which has been omitted from

15 the Proxy;

16      C.      Directing Defendants to account to Plaintiff and the Class for all damages sustained as

17 a result of their wrongdoing;

18      D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable

19 attorneys' and expert fees and expenses; and

20      E.      Granting such other and further relief as this Court may deem just and proper.

21                                    **JURY DEMAND**

22      Plaintiff demands a trial by jury on all issues so triable.

23

24 Dated:  May 17, 2018

25                                         Respectfully submitted,

26                                         **FARUQI & FARUQI, LLP**

27 **OF COUNSEL:**

   By: _/s/ Benjamin Heikali_____

28
                                          18

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)**
**OF THE SECURITIES EXCHANGE ACT OF 1934**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FARUQI & FARUQI, LLP**
Nadeem Faruqi
James M. Wilson, Jr.
685 Third Ave., 26th Fl.
New York, NY 10017
Tel.: (212) 983-9330
Email: nfaruqi@faruqilaw.com
Email: jwilson@faruqilaw.com

*Counsel for Plaintiff*

Benjamin Heikali, Bar No. 307466
10866 Wilshire Blvd., Suite 1470
Los Angeles, CA 90024
Tel.: (424) 256-2884
Fax: 424.256.2885
Email: bheikali@faruqilaw.com

*Counsel for Plaintiff*

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)
OF THE SECURITIES EXCHANGE ACT OF 1934**

## CERTIFICATION OF PROPOSED LEAD PLAINTIFF

I, Michael Byrne ("Plaintiff"), declare, as to the claims asserted under the federal securities laws, that:

1. Plaintiff has reviewed a draft complaint against Verifone Systems, Inc. ("Verifone") and its board of directors and has authorized the filing of a complaint substantially similar to the one I reviewed.

2. Plaintiff selects Faruqi & Faruqi, LLP and any firm with which it affiliates for the purpose of prosecuting this action as my counsel for purposes of prosecuting my claim against defendants.

3. Plaintiff did not purchase the security that is the subject of the complaint at the direction of Plaintiff's counsel or in order to participate in any private action arising under the federal securities laws.

4. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

5. Plaintiff's transactions in Verifone securities that are the subject of the complaint during the class period specified in the complaint are set forth in the chart attached hereto.

6. In the past three years, Plaintiff has not sought to serve nor has served as a representative party on behalf of a class in an action filed under the federal securities laws, except as specified below:

7. Plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury under the laws of the United States that the foregoing information is correct to the best of my knowledge.

Signed this 17th day of May, 2018.

_____
Michael Byrne

| Transaction<br>(Purchase or Sale) | Trade Date | Quantity |
|---|---|---|
| Purchase | 08/17/17 | 300 |
| | | |
| | | |
| | | |