Benjamin Heikali (SBN 307466)
**FARUQI & FARUQI, LLP**
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: (424) 256-2884
Facsimile: (424) 256-2885
E-mail:  bheikali@faruqilaw.com
[Additional Captions on Signature Page]
*Attorney for Plaintiff Michael Byrne*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL BYRNE, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>VERIFONE SYSTEMS, INC., ALEX WAY HART, ROBERT W. ALSPAUGH, JONATHAN I. SCHWARTZ, LARRY ALLAN KLANE, ROBERT BRADSHAW HENSKE, RONALD D. BLACK, KAREN A. AUSTIN, PAUL S. GALANT, JANE J. THOMPSON, and ROWAN M. TROLLOPE,<br><br>Defendants. | Case No.:  4:18-cv-02926-YGR<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION;**<br>**MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: June 12, 2018<br>Time: 2:00 p.m.<br>Dept: Courtroom 1 – Fourth Floor<br>Judge: Yvonne Gonzalez Rogers<br><br>Complaint filed: May 17, 2018 |

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................1

STATEMENT OF FACTS ....................................................................................2

LEGAL STANDARD AND ARGUMENT ...........................................................3

I.      STANDARD FOR INJUNCTIVE RELIEF ...............................................3

II.     PLAINTIFF HAS DEMONSTRATED A REASONABLE PROBABILITY
        OF SUCCESS ON THE MERITS OF HIS CLAIM .................................3

        A.      PLAINTIFF'S SECTION 14(A) CLAIM.......................................3

        B.      DEFENDANTS' FAILURE TO DISCLOSE AND RECONCILE
                CERTAIN NON-GAAP FINANCIAL METRICS CONSTITUTES
                A VIOLATION OF SEC REGULATION G.......................................5

        C.      DEFENDANTS' FAILURE TO ADEQUATELY DISCLOSE MATERIAL
                INFORMATION REGARDING THE COMPANY'S PROJECTIONS
                VIOLATES RULE 14A-9 ...............................................................9

        D.      THE PROXY OMITS MATERIAL INFORMATION REGARDING THE
                BACKGROUND OF THE PROPOSED MERGER .............................10

        E.      THE OTHER ELEMENTS OF A SECTION 14(A) CLAIM ARE MET............11

III.    PLAINTIFF AND VERIFONE'S OTHER PUBLIC SHAREHOLDERS WILL BE
        IRREPARABLY HARMED UNLESS THE JUNE 19 VOTE IS ENJOINED ...............12

IV.     THE BALANCE OF EQUITIES TIPS IN PLAINTIFF'S FAVOR
        AND AN INJUNCTION TO MAKE CORRECTIVE DISCLOSURES
        IS IN THE PUBLIC INTEREST ...................................................................14

V.      NO SECURITY IS NECESSARY .................................................................15

CONCLUSION ....................................................................................................16

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*2Die4Kourt v. Hillair Capital Mgmt., LLC*,
 692 Fed. Appx. 366 (9th Cir. 2017) ........................................................... 15

*Allergan, Inc. v. Valeant Pharms. Int'l, Inc.*,
 No. SACV 14-1214-DOC(ANx),
 2014 U.S. Dist. LEXIS 156227 (C.D. Cal. Nov. 4, 2014)...................... 3, 14

*In re Ancestry.com Inc. S'holder Litig.*,
 C.A. No.7988-CS,
 Excerpts of Tr. of Pls' Mot. for Prelim. Injunction and the Court's Ruling
 (Del. Ch. Dec. 17, 2012) ........................................................................... 11

*Arnold v. Soc'y for Sav. Bancorp*,
 650 A.2d 1270 (Del. 1994) ........................................................................ 13

*In re Atheros Commc'ns, Inc. S'holder Litig.*,
 No. 6124-VCN, 2011 Del. Ch. LEXIS 36 (Del. Ch. Mar. 4, 2011) ............ 13

*In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*,
 757 F. Supp. 2d 260 (S.D.N.Y. 2010) ......................................................... 12

*Basic Inc. v. Levinson*,
 485 U.S. 224 (1988) ..................................................................................... 5

*In re Browing-Ferris Indus., Inc. S'holder Derivative Litig.*,
 830 F. Supp. 361, (S.D. Tex. 1993) .............................................................. 4

*Brown v. Brewer*,
 Case No. CV 06-3731-GHK (JTLx),
 2008 U.S. Dist. LEXIS 108904 (C.D. Cal. July 14, 2008) ........................ 12

*Brown v. Brewer*,
 No. CV 06-3731-GHK, 2010 U.S. Dist. LEXIS 60863 (C.D. Cal. June 17, 2010).......... 7, 11, 13

*In re Complete Genomics, Inc. S'holder Litig.*,
 C.A. No. 7888-VCL,
 Tr. of Telephonic Oral Arg. and the Court's Ruling (Del. Ch. Nov. 27, 2012)........................ 11

*Gilder v. PGA Tour, Inc.*,
 936 F.2d 417 (9th Cir. 1991) ........................................................................ 3

*In re Hot Topic, Inc. Sec. Litig.*,
 No. CV 13-02939, 2014 U.S. Dist. LEXIS 180513 (C.D. Cal. May 2, 2014).............................7

ii

*Jorgensen v. Cassiday*,
   320 F.3d 906 (9th Cir. 2003) ..................................................... 15

*Knollenberg v. Harmonic, Inc.*,
   152 Fed. Appx. 674 (9th Cir. 2005) ........................................... 4

*Koehler v. NetSpend Holdings Inc.*,
   No. 8373-VCG, 2013 Del. Ch. LEXIS 131 (Del. Ch. May 21, 2013) ....................... 11

*Kramas v. Sec. Gas & Oil Inc.*,
   672 F.2d 766 (9th Cir. 1982) ..................................................... 4

*Lane v. Page*,
   581 F. Supp. 2d 1094 (D.N.M. 2008) ........................................... 4

*Lone Star Steakhouse & Saloon, Inc. v. Adams*,
   148 F. Supp. 2d 1141 (D. Kan. 2001) ..................................... 4, 12, 14

*Maric Capital Master Fun, Ltd. v. Plato Learning, Inc.*,
   11 A.3d 1175 (Del. Ch. 2010) ..................................................... 13

*Nichting v. DPL Inc.*,
   No. 3:11-cv-141, 2011 U.S. Dist. LEXIS 76739 (S.D. Ohio July 15, 2011) .......................... 13

*N.Y. City Emps.' Ret. Sys. v. Jobs*,
   593 F.3d 1018 (9th Cir. 2010) ..................................................... 4

*Parsons v. Jefferson–Pilot Corp.*,
   789 F. Supp. 697 (M.D.N.C. 1992) ........................................... 11

*Piper v. Chris-Craft Indus.*,
   430 U.S. 1 (1977) ..................................................... 14

*In re Pure Res. S'holders Litig.*,
   808 A.2d 421 (Del. Ch. 2002) ..................................................... 12

*Schulein v. Petroleum Dev. Corp.*,
   No. SACV 11-1891-AG,
   2014 U.S. Dist. LEXIS 71236 (C.D. Cal. May 19, 2014) ........................................... 7

*Santa Fe Indus., Inc. v. Green*,
   430 U.S. 462 (1977) ..................................................... 3

*St. Louis Police Ret. Sys. v. Severson*,
   No. 12-CV-5086 YGR, 2012 U.S. Dist. LEXIS 152392 (N.D. Cal. Oct. 23, 2012) .................. 13

*In re Tele-Comms., Inc. S'holders Litig.*,
   C.A. No. 16470, 2005 Del. Ch. LEXIS 206 (Del. Ch. Dec. 21, 2005 ........................... 13

iii

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES**

*In re The Topps Co. S'holders Litig.*,
    926 A.2d 58 (Del. Ch. 2007) ........................................................... 11

*TSC Indus. v. Northway, Inc.*,
    426 U.S. 438 (1976) ...................................................................... 5, 7

*Va. Bankshares, Inc. v. Sandberg*,
    501 U.S. 1083 (1991) ........................................................................ 5

*In re Zagg Sec. Litig.*,
    No. 2:12-CV-852, 2014 U.S. Dist. LEXIS 15783 (D. Utah Feb. 7, 2014)................. 4

**Statutes**

15 U.S.C. § 78n(a) .................................................................................. 7

**Other Authorities**

17 C.F.R. § 229.10(e)(1)(i)(B) ................................................................. 8

17 C.F.R. § 240.14a-9 ........................................................................ 5, 9

17 C.F.R. § 244.100 ....................................................................... 4, 8, 9

Actel Corporation, SEC Staff Comment Letter (Oct. 13, 2010)................................ 8

Federal Rule of Civil Procedure 65(c) ....................................................... 15

Gretchen Morgenson,
    *Fantasy Math Is Helping Companies Spin Losses Into Profits*,
    N.Y. Times, Apr. 22, 2016.................................................................. 8

Nicolas Grabar and Sandra Flow,
    *Non-GAAP Financial Measures:  The SEC's Evolving Views*, Harvard Law School Forum
    on Corporate Governance and Financial Regulation (June 24, 2016)........................ 8

Youku Tudou Inc., *et. al.*, Correspondence (Jan. 11, 2016) ............................... 8

Youku Tudou Inc., *et al.*, SEC Staff Comment Letter (Jan. 20, 2016)....................... 8

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY
INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES**

1

## NOTICE OF MOTION AND MOTION

2       PLEASE TAKE NOTICE that on June 12, 2018, at 2:00 p.m., or as soon thereafter as the

3   matter may be heard, in Courtroom 1, Fourth Floor, 1301 Clay Street, Oakland, CA 94612, Plaintiff

4   Michael Byrne will move the Court for an order preliminarily enjoining the special shareholder

5   meeting scheduled for June 19, 2018 ("June 19 Vote") to vote on the proposed merger (the "Proposed

6   Merger") of Verifone Systems, Inc. ("Verifone" or the "Company") with an investor group led by

7   Francisco Partners and including British Columbia Investment Management Corporation ("BCI").

8   On or around May 7, 2018, defendants filed with the United States Securities and Exchange

9   Commission ("SEC") a Proxy Statement on a Schedule 14A (the "Proxy") which recommends that

10  shareholders vote in favor of the Proposed Merger at the June 19 Vote, but omits or misrepresents

11  material information that is preventing Verifone's shareholders from making a fully-informed

12  decision regarding whether to vote in favor of the Proposed Merger.

13      As detailed in the Memorandum of Law below, Plaintiff alleges the Proxy omits material

14  information with respect to the Proposed Merger, which renders the Proxy misleading.  Accordingly,

15  Plaintiff alleges the defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of

16  1934 (the "Exchange Act") and SEC Rule 14a-9 and SEC Regulation G, 17 C.F.R. § 244.100

17  thereunder in connection with the Proxy, and Plaintiff respectfully requests that the Court enjoin the

18  special shareholder meeting until defendants publicly disclose the material information sought herein.

19      WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff's Motion for

20  Preliminary Injunction and enjoin the special shareholder meeting, pending corrective disclosures by

21  defendants.

22  Dated: May 25, 2018                    Respectfully submitted,

23                                          **FARUQI & FARUQI, LLP**

24                                          By: _/s/ Benjamin Heikali_
                                            Benjamin Heikali, Bar No. 307466
25

26

27

28

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY
INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES**
4:18cv2926YGR

**INTRODUCTION**

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Civil Local Rules 6-3 and 65-2, Plaintiff Michael Byrne ("Plaintiff") respectfully submits this Memorandum of Law in Support of his Motion for Preliminary Injunction ("PI Motion") enjoining the special shareholder meeting scheduled for June 19, 2018 ("June 19 Vote") to vote on the proposed merger (the "Proposed Merger") of Verifone Systems, Inc. ("Verifone" or the "Company") with an investor group led by Francisco Partners and including British Columbia Investment Management Corporation ("BCI"). Plaintiff also simultaneously is filing pursuant to Civil Local Rule 6-3, a motion to shorten the briefing schedule and to hold oral argument on this PI Motion prior to the June 19 Vote.[1]  Plaintiff seeks to enjoin the June 19 Vote until Defendants[2] publicly disclose the material information discussed below which they have omitted from the Proxy Statement on a Schedule 14A (the "Proxy"),[3] they caused to be filed with the Securities and Exchange Commission ("SEC") and disseminated to Verifone shareholders on or around May 7, 2018.[4]

Plaintiff alleges that Defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") (15 U.S.C. §§ 78n(a), 78t(a)), SEC Rule 14a-9 (17 C.F.R. § 240.14a-9), and Regulation G (17 C.F.R. § 244.100) by causing the materially incomplete and misleading Proxy to be disseminated to Verifone shareholders.  More specifically, the Proxy omits material information regarding the following: (i) management's financial projections for the

---

[1]    Plaintiff commenced this Action on May 17, 2018 and immediately reached out to Defendants and their counsel regarding the substance of this PI Motion. Plaintiff made several efforts to discuss a resolution to this PI Motion, but Defendants failed to respond.

[2]    "Defendants" are defined Verifone Systems, Inc., Alex Way Hart, Robert W. Alspaugh, Jonathan I. Schwartz, Larry Allan Klane, Robert Bradshaw Henske, Ronald D. Black, Karen A. Austin, Paul S. Galant, Jane J. Thompson, and Rowan M. Trollope.

[3]    The Proxy is attached as Exhibit 1 to the Declaration of Benjamin Heikali in Support of Plaintiff's Motion for Preliminary Injunction (the "Heikali Decl.").

[4]    The Preliminary Proxy was filed with the SEC on May 7, 2018. The Definitive Proxy that set the June 19, 2018 Vote Date for shareholders was filed on May 21, 2018.  The Definitive Proxy does not address or resolve Plaintiff's allegations or Section 14(a) claim.

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES**

Company that were relied upon by the Board in recommending the Company's shareholders vote in favor of the Proposed Merger; and (ii) the sale process leading up to the decision to recommend the Proposed Merger. Complaint ¶ 5.[5]  These omissions render statements in the Proxy misleading.

As discussed below, Verifone shareholders will be forced to cast a vote on a significant corporate transaction that will forever impact their investment and thus suffer irreparable harm absent the relief requested.

## STATEMENT OF FACTS

Verifone is a technology company which provides electronic payment transactions and value-added services at the point of sale to its global customer base, which includes financial institutions, payment processors, and large retailers among others.  ¶ 26.  Verifone is incorporated in Delaware and maintains its principal executive offices at 88 West Plumeria Drive, San Jose, California 95134.  The Company's common stock trades on the NYSE under the ticker symbol "PAY."  ¶ 12.

On April 9, 2018, the Verifone Board caused the Company to enter into an agreement and plan of merger ("Merger Agreement"), pursuant to which the Company's shareholders will receive $23.04 in cash for each share of Verifone stock they own (the "Merger Consideration"), a transaction valued at $3.4 billion. ¶ 2.  On May 7, 2018, the Proxy was disseminated to Verifone shareholders, which recommends that shareholders vote in favor of the Proposed Merger at the June 19 Vote. ¶ 3.  Plaintiff alleges that Defendants have recommended the Proposed Merger as fair to Verifone shareholders with the Proxy that omits material information and renders statements in the Proxy misleading in violation of Regulation G and SEC Rule 14a-9 as required by Section 14(a) of the Exchange Act. ¶ 4.

---

[5]  Citations to "¶ __" refer to paragraphs in Plaintiff's Class Action Complaint (the "Complaint"), filed on May 17, 2018 [DI 1].  Capitalized terms have the meaning assigned in the Complaint.

## LEGAL STANDARD AND ARGUMENT

### I.     STANDARD FOR INJUNCTIVE RELIEF

"In the Ninth Circuit, a plaintiff may obtain preliminary injunctive relief if he satisfies either the *Winter* factor test or the 'sliding scale' test, also referred to as the 'serious questions' test." *Allergan, Inc. v. Valeant Pharm. Int'l, Inc.*, No. SACV 14-1214-DOC(ANx), 2014 U.S. Dist. LEXIS 156227, at *17 (C.D. Cal. Nov. 4, 2014) (citing *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008)). "Under the *Winter* factor test, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest. Under the sliding scale test, a slightly weaker showing of success on the merits . . . can be outweighed by strong equitable considerations . . . . The irreparable harm and public interest factors are the same as in the *Winter* test. While the sliding scale test requires the plaintiff to make a showing on all four prongs, the showing need not be equally strong." *Id.* at *17-18 (internal citations omitted).[6]

### II.    PLAINTIFF HAS DEMONSTRATED A REASONABLE PROBABILITY OF SUCCESS ON THE MERITS OF HIS CLAIM

#### A.     Plaintiff's Section 14(a) Claim

Plaintiff has a substantial likelihood of success on the merits of his claims. Section 14(a) is violated if Defendants issued a Proxy that fails to comply with SEC rules and regulations. Section 14(a)'s "fundamental purpose" (and, indeed, the purpose of the entire Securities and Exchange Act of 1934) is to require "full disclosure" of all material facts. *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 478 (1977) (internal quotations omitted). Plaintiff alleges that the Proxy

---

[6] "The critical element in determining the test to be applied is the relative hardship to the parties. If the balance of harm tips decidedly toward the plaintiff, then the plaintiff need not show as robust a likelihood of success on the merits as when the balance tips less decidedly." *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 422 (9th Cir. 1991) (internal citations omitted). Here, it is clear that the irreparable harm suffered by Plaintiff and other Verifone shareholders if the June 19 Vote is allowed to proceed prior to sufficient disclosure far outweighs any modest inconvenience to Defendants if they have to correct the deficiencies in their solicitation materials.

violates Regulation G and Rule 14a-9. [7]   To state a claim under Section 14(a), a plaintiff must allege that: (1) a proxy contained a material misrepresentation or omission; (2) the material misrepresentation or omission caused the plaintiff injury; and (3) that the proxy solicitation was an essential link in the accomplishment of the transaction.  *See N.Y. City Emps.' Ret. Sys. v. Jobs*, 593 F.3d 1018, 1022 (9th Cir. 2010); *Knollenberg v. Harmonic, Inc*., 152 Fed. Appx. 674, 682 (9th Cir. 2005) (citing *Atl. Coast Airlines Holdings v. Mesa Air Group, Inc.*, 295 F. Supp. 2d 75, 81-82 (D.D.C. 2003) (quoting *Gen. Elec. Co. v. Cathcart*, 980 F.2d 927, 932 (3d Cir. 1992) (quoting *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 385 (1970)); *see also e.g.*, *In re Zagg Sec. Litig.*, No. 2:12-CV-852, 2014 U.S. Dist. LEXIS 15783, at *20 (D. Utah Feb. 7, 2014), *aff'd*, 797 F.3d 1194 (10th Cir. 2015); *Lane v. Page*, 581 F. Supp. 2d 1094, 1110-11 (D.N.M. 2008); *Lone Star Steakhouse & Saloon, Inc. v. Adams*, 148 F. Supp. 2d 1141, 1151 (D. Kan. 2001); *In re Browing-Ferris Indus., Inc. S'holder Derivative Litig.*, 830 F. Supp. 361, 365 (S.D. Tex. 1993) (same).

Plaintiff alleges two regulatory violations by Defendants in support of his Section 14(a) claim: Regulation G and Rule 14a-9. Regulation G requires that "[w]henever a registrant . . . publicly discloses material information that includes a non-GAAP financial measure, the registrant must accompany that non-GAAP financial measure with: (1) A presentation of the most directly comparable financial measure calculated and presented in accordance with Generally Accepted Accounting Principles (GAAP); and (2)  reconciliation . . . which shall be quantitative for historical non-GAAP measures presented, and quantitative . . . of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP . . ." 17 C.F.R. § 244.100(a).

---

[7]     As Plaintiff's Section 14(a) claim is a predicate to his claim under Section 20(a), the Court need only consider whether Plaintiff is likely to succeed on his Section 14(a) claim for purposes of the instant motion.  *See Smith v. Robbins & Myers, Inc.*, 969 F. Supp. 2d 850, 875 (S.D. Ohio 2013) (noting that liability under § 20(a) requires a showing of a primary violation under § 14(a)).

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES**

Rule 14a-9 prohibits making a statement in a solicitation which is "false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading . . . ."  17 C.F.R. § 240.14a-9.

Materiality is a fundamental element of a Section 14(a) claim. The Supreme Court has explained that information is "material" and therefore subject to the SEC regulatory scheme "if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *TSC Indus. v. Northway, Inc.*, 426 U.S. 438, 449 (1976); *see also Va. Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1086-87 (1991) (explaining that section 14(a) and related rules prohibit solicitation of proxies by means of materially misleading statements or omissions); *Basic Inc. v. Levinson*, 485 U.S. 224, 231 (1988); *Kramas v. Sec. Gas & Oil Inc.*, 672 F.2d 766, 769 (9th Cir. 1982) (same).

**B.     Defendants' Failure to Disclose and Reconcile Certain Non-GAAP Financial Metrics Constitutes a Violation of SEC Regulation G**

Defendants have failed to disclose certain financial projections necessary for Verifone shareholders to assess the non-GAAP (Generally Accepted Accounting Principles) financial projections included in the Proxy, in violation of SEC Regulation G, 17 C.F.R. § 244.100.[8] ¶ 36.

Specifically, the Proxy provides values for non-GAAP measures: (1) Non-GAAP Net Revenue; (2) EBITDA; (3) Non-GAAP Net Income; (4) Non-GAAP EPS; (5) Adjusted NOPAT; and (6) Unlevered Free Cash Flow ("UFCF") but fails to provide line items or reconciliation for any of these metrics:

> (i)     the Proxy defines Non-GAAP Net Revenue as "net revenues, excluding amortization of step-down in deferred net revenue of acquired businesses, adjusted to exclude divested businesses[,]" but never provides values for the line items nor a reconciliation to its most comparable GAAP equivalent;

---

[8]     As discussed in Section C, Defendants failure to comply with Regulation G also violates Rule 14a-9 due to the misleading nature of non-GAAP financial measures.

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES**

(ii)     the Proxy discloses that EBITDA "is a non-GAAP financial measure defined as earnings before interest, taxes, depreciation and amortization. EBITDA excludes the amortization of step-down in deferred revenue (and associated costs of goods sold) at acquisition of acquired businesses, amortization of purchased intangible assets, merger and acquisition related charges and costs associated with litigation and other loss contingencies." Proxy 42. Nevertheless, the Proxy does not provide the values of the line items nor a reconciliation to its most comparable GAAP equivalent;

(iii)    the Proxy discloses that Non-GAAP Net Income "excludes the amortization of step-down in deferred revenue (and associated costs of goods sold) at acquisition of acquired businesses, amortization of purchased intangible assets, merger and acquisition related charges and costs associated with litigation and other loss contingencies." Proxy 42. The Proxy neither provides the values of these line items nor provides a reconciliation to net income, its most comparable GAAP equivalent;

(iv)     the Proxy provides values for "Non-GAAP EPS", but does not provide a definition, the line items used in its calculation, or a reconciliation to its most comparable GAAP equivalent;

(v)      the Proxy discloses that "[a]djusted NOPAT is a non-GAAP financial measure calculated as non-GAAP operating income (excluding the items described in the second sentence of footnote 3) subtracting (a) taxes and (b) other recurring cash expenses." Proxy 42. The Proxy does not disclose the values of the line items or a reconciliation of the measure to its GAAP equivalent;

(vi)     the Proxy discloses that UFCF "is a non-GAAP financial measure calculated as Adjusted NOPAT (as described above), adding depreciation and amortization, and subtracting (a) capital expenditures and (b) increases in net working capital. Unlevered free cash flow excludes stock-based compensation expense and other

1  non-cash items."  Proxy 42.  The Proxy does not disclose the values of the line

2  items or a reconciliation of the measure to its GAAP equivalent.  ¶¶ 37-43.

3      This information is plainly material because shareholders would find it important to

4  understand the Company's standalone prospects in deciding whether or not to approve the

5  Proposed Merger. ¶¶ 31-35.  It is well-settled that management's financial projections are among

6  the most important information a shareholder can have when evaluating the proposed

7  consideration in a merger.  *See In re Hot Topic, Inc. Sec. Litig.*, No. CV 13-02939 SJO (JCx), 2014

8  U.S. Dist. LEXIS 180513 (C.D. Cal. May 2, 2014) (denying motion to dismiss in part based on

9  failure to disclose unlevered free cash flows); *Schulein v. Petroleum Dev. Corp.*, No. SACV 11-

10  1891-AG, 2014 U.S. Dist. LEXIS 71236 (C.D. Cal. May 19, 2014) (denying partial summary

11  judgment concerning disclosure related to discount rate); *Brown v. Brewer*, No. CV 06-3731-GHK

12  (SHx), 2010 U.S. Dist. LEXIS 60863, at *70 (C.D. Cal. June 17, 2010) ("A reasonable shareholder

13  would have wanted to independently evaluate management's internal financial projections to see

14  if the company was being fairly valued. [T]here is a substantial likelihood that a reasonable

15  shareholder would consider it important in making his decision.") (internal quotation marks

16  omitted).  Indeed, there is a disparity between the wealth of information available to corporations,

17  and how they choose to present that information to shareholders.  There are innumerable ways to

18  manipulate the financial information of a company.  Compliance with GAAP guidelines provides

19  shareholders with recognizable and uniform metrics.  Verifone's shareholders would undoubtedly

20  view reconciliation of non-GAAP metrics to their most directly comparable GAAP equivalents as

21  significantly altering the information available.  *See TSC Indus., Inc*, 426 U.S. at 449.

22      Defendants' failure to comply with SEC Regulation G, ***in and of itself***, violates Section

23  14(a), which prohibits the solicitation of proxies in "contravention of such rules and regulations as

24  the Commission may prescribed as necessary or appropriate in the public interest or for the

25  protection of investors . . . ." 15 U.S.C. § 78n(a).  SEC Regulation G has two requirements: (1) a

26  general disclosure requirement; and (2) a reconciliation requirement.  The general disclosure

27

28

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY
INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES**

1    requirement prohibits "mak[ing] public a non-GAAP financial measure that, taken together with

2    the information accompanying that measure . . . contains an untrue statement of a material fact or

3    omits to state a material fact necessary in order to make the presentation of the non-GAAP financial

4    measure . . . not misleading." 17 C.F.R. § 244.100(b).[9]  Pursuant to Regulation G, when an issuer

5    chooses to disclose a non-GAAP measure, the issuer must provide a presentation of the "most

6    directly comparable" GAAP measure, as well as a reconciliation "by schedule or other clearly

7    understandable method" of the non-GAAP measure to the "most directly comparable" GAAP

8    measure.  17 C.F.R. § 244.100(a).  Further, the disclosure of non-GAAP measures, assumptions

9    and inputs is an affirmative mandatory requirement when the Board expressly relied on such

10   measures to make the recommendation.   17 C.F.R. § 244.100.   Item 10(e)(1)(i)(B) of SEC

11   Regulation S-K further states that, with regard to forward-looking information such as financial

12   projections, *any* reconciling metrics that are available without unreasonable efforts must be

13   disclosed. 17 C.F.R. § 229.10(e)(1)(i)(B).   Moreover, the SEC has repeatedly emphasized that

14   disclosure of non-GAAP projections can be inherently misleading and has therefore heightened its

15   scrutiny of the use of such projections.[10]

16

17

[9]       The SEC often enforces Regulation G compliance in the context of mergers. *See* Actel
Corporation, SEC Staff Comment Letter (Oct. 13, 2010) ("This section includes non-GAAP
financial measures.  Please revise to provide the disclosure required by Rule 100 of Regulation
G.") (attached as Ex. 2 to Heikali Decl.).  *Compare* Youku Tudou Inc., et. al., Correspondence
(Jan. 11, 2016) (attached as Ex. 3 to Heikali Decl.) (Issuer arguing that Rule 100(d) of Regulation
G does not apply to non-GAAP financials relating to a business compensation), *with* Youku Tudou
Inc., et. al., SEC Staff Comment Letter (Jan. 20, 2016) (attached as Ex. 4 to Heikali Decl.) ("We
note that your disclosure of projected financial information is not in response to the requirements
of, or pursuant to, Item 1015 of Regulation M-A and is thus not excepted from Rule 100 of
Regulation G.").

[10]      *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures:  The SEC's
Evolving Views*, Harvard Law School Forum on Corporate Governance and Financial Regulation
(June 24, 2016), https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-
secs-evolving-views/; Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into
Profits*, N.Y. Times, Apr. 22, 2016, http://www.nytimes.com/2016/04/24/business/fantasy-math-
is-helping-companies-spin-losses-into-profits.html?_r=0.

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY
INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES**

1    Defendants' failure to comply constitutes a violation of Section 14(a) because Regulation

2    G is a "regulation" the SEC defines, prescribes, and enforces.  As such, Defendants must: (i)

3    provide a reconciliation schedule of the differences between the disclosed non-GAAP financial

4    measures with their respective most directly comparable GAAP financial measures; and/or (ii)

5    disclose the line item projections referenced above.  17 C.F.R. § 244.100.

6    **C.    Defendants' Failure to Adequately Disclose Material Information Regarding
7           the Company's Projections Violates Rule 14a-9**

8    Defendants failure to disclose material information regarding the Company's projections

9    also violates SEC Rule 14a-9.  Rule 14a-9 prohibits making a statement in a solicitation which is

10   "false or misleading with respect to any material fact or which omits to state any material fact

11   necessary in order to make the statements therein not false or misleading . . . ."  17 C.F.R. §

12   240.14a-9.

13   Plaintiff alleges the Proxy's violation of Regulation G, the lack of reconciliation, or at the

14   very least the line items utilized in calculating the non-GAAP measures renders the financial

15   projections disclosed materially misleading as shareholders are unable to understand the

16   differences between the non-GAAP measures and their respective most comparable GAAP

17   financial measures. ¶ 47.[11]  Such projections are necessary to make the non-GAAP projections

18   included in the Proxy not misleading.  Indeed, Defendants acknowledge the misleading nature of

19   non-GAAP projections, as Verifone shareholders are cautioned:

20        The Management Projections include "non-GAAP financial measures," which are
          financial measures that are not calculated in accordance with generally accepted
21        accounting principles, or GAAP. These non-GAAP financial measures should not
          be viewed as a substitute for GAAP financial measures and may be different from
22        non-GAAP financial measures used by other companies. Furthermore, there are
          limitations inherent in non-GAAP financial measures because they exclude items,
23        including charges and credits, that are required to be included in a GAAP
          presentation.
24

25   ¶ 48.

26

27   ―――――――――――――――
     [11]    Materiality is discussed above.

28
                                              9

**D.     The Proxy Omits Material Information Regarding the Background of the Proposed Merger**

The Proxy also is materially false and/or misleading due to omitted information regarding the background of the Proposed Merger.

Plaintiff alleges that the Proxy discloses that the Company and certain interested parties entered into non-disclosures agreements ("NDAs") in order to evaluate "a potential transaction between the parties." ¶ 50.  Specifically, the Company's shareholders are unable to determine whether the NDAs contain certain customary provisions such as standstill or "Don't Ask, Don't Waive" ("DADW").  Without further information regarding these NDAs, shareholders are unable to discern whether the Proposed Merger is in fact the best strategic alternative, or whether there is a better alternative that is currently prohibited from being made public.  As a result, the description of the sale process and the NDAs is materially misleading as shareholders are unable to determine whether the two most likely interested bidders were prohibited from making a topping bid. ¶ 51. This information is particularly material to the Company's shareholders in light of the thirty day go-shop period in which the Company may solicit other offers.  Proxy, 35.  Without details regarding the restrictions set forth in the NDAs, shareholders are unable to determine whether the two most likely interested bidders were restricted from participating in the go-shop period. ¶ 52. The omitted information clearly is material as the Proxy discloses:

> *Best Alternative for Maximizing Stockholder Value*.  The Board considered that the per share merger consideration was more favorable to the stockholders than the potential value that would reasonably be expected to result from other alternatives reasonably available to the Company, including the continued standalone operation of the Company as an independent public company, taking into account its strategic alternatives and financing plans on an ongoing basis . . . .

¶ 54.

Confidentiality agreements regularly contain standstill provisions that prevent potential bidders from asking for a waiver from the standstill restrictions during the bidding process and after the merger agreement is signed, also known as "don't ask don't waive" provisions.  DADW provisions that do not terminate or fall away once a merger agreement is signed so that other

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES**

1    bidders can seek to make a superior offer are generally prohibited.  *See Koehler v. NetSpend*

2    *Holdings Inc.*, No. 8373-VCG, 2013 Del. Ch. LEXIS 131, at *67-71 (Del. Ch. May 21, 2013).

3    Verifone's shareholders would undoubtedly find it material to know whether or not any of the

4    parties referenced above were contractually prohibited from making a superior offer to purchase

5    the Company.  This information takes on heightened importance considering that the Company is

6    restricted from releasing any person from, or modifying or waiving any provision of, any

7    confidentiality, standstill, or similar agreement by the terms of the Merger Agreement.  *See In re*

8    *The Topps Co. S'holders Litig.*, 926 A.2d 58, 79 (Del. Ch. 2007) (noting the significance of

9    ensuring shareholders are aware of standstill terms and criticizing failure to "disclose [] the terms

10   of the Standstill Agreement . . . ."); *see also In re Complete Genomics, Inc. S'holder Litig.*, C.A.

11   No. 7888-VCL, Tr. of Telephonic Oral Arg. and the Court's Ruling (Del. Ch. Nov. 27, 2012)

12   (attached as Ex. 5 to Heikali Decl.); *Koehler*, 2013 Del. Ch. LEXIS 131, at *70-71; *In re*

13   *Ancestry.com Inc. S'holder Litig.*, C.A. No.7988-CS, Excerpts of Tr. of Pls' Mot. for Prelim.

14   Injunction and the Court's Ruling (Del. Ch. Dec. 17, 2012) (attached as Ex. 6 to Heikali Decl.).

15   As a result of this omission, the Proxy is materially false and/or misleading

16              **E.      The Other Elements of a Section 14(a) Claim Are Met**

17              Plaintiff also has clearly established the other elements for a Section 14(a) claim.

18              The second element is clearly established because "As a matter of law, the preparation of

19   a proxy statement by corporate insiders containing materially false or misleading statements or

20   omitting a material fact is sufficient to satisfy the *Gerstle* negligence standard. Accordingly, a

21   director may be found negligent under Section 14(a) for a failure to notice material omissions upon

22   reading a proxy statement." *Brown*, 2010 U.S. Dist. LEXIS 60863, at *81 (internal citation

23   omitted) (internal quotation marks omitted); *see also Parsons v. Jefferson–Pilot Corp.*, 789 F.

24   Supp. 697, 703 (M.D.N.C. 1992) (holding that a director may be found negligent under Section

25   14(a) for a failure to notice material omissions upon reading a proxy statement).

26              Finally, the third element is easily satisfied, as it is indisputable that the Proxy is an

27

28

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY
INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES**

1    "essential link" necessary for the Proposed Merger to be consummated.  *Brown v. Brewer*, Case

2    No. CV 06-3731-GHK (JTLx), 2008 U.S. Dist. LEXIS 108904, at *8 (C.D. Cal. July 14, 2008)

3    (holding that a proxy is an essential link in the approval of a merger as shareholder approval is

4    required to complete the transaction); *see also In re Bank of Am. Corp. Sec., Derivative, & ERISA*

5    *Litig.*, 757 F. Supp. 2d 260, 292 n.3 (S.D.N.Y. 2010) ("[T]he Joint Proxy was an essential link in

6    the transaction because the acquisition could not have occurred without the shareholder vote.").

7    **III.    PLAINTIFF AND VERIFONE'S OTHER PUBLIC SHAREHOLDERS WILL BE
         IRREPARABLY HARMED UNLESS THE JUNE 19 VOTE IS ENJOINED**

8

9          Plaintiff and Verifone's other shareholders will be irreparably harmed if the Court does not

10   enjoin the June 19 Vote until Defendants remedy the disclosure deficiencies detailed above. The

11   failure to disclose all material information has long been recognized as constituting irreparable

12   harm, especially in the context of a merger such as this.  Indeed, the Supreme Court has recognized

13   that:

14         'use of solicitation which is materially misleading poses the kind of irreparable
           injury to stockholders which can justify injunctive relief prior to a shareholder's
15         meeting'. . . . [T]he Court held that courts must judge an application for injunctive
           relief according to traditional equitable principles which require a separate
16         showing of irreparable harm. Defendant thus cannot prove irreparable harm
           merely by showing a material false solicitation.
17

18         Nonetheless, the court finds irreparable injury would occur absent an injunction
           prohibiting the voting of proxies based upon false and misleading information.  At
19         a minimum, the free and intelligent voting rights of plaintiff's shareholders will be
           forfeited if such votes are exercised based upon false or misleading information.
20         Monetary damages cannot restore the right of shareholders to effectively exercise
           their corporate suffrage rights.

21   *Lone Star Steakhouse & Saloon, Inc.*, 148 F. Supp. 2d at 1149-50 (internal citations omitted); *see*

22   *also In re Pure Res., Inc. S'holders Litig.*, 808 A.2d 421, 452 (Del. Ch. 2002) ("[I]rreparable injury

23   is threatened when a stockholder might make a tender or voting decision on the basis of materially

24   misleading or inadequate information.").

25         The omitted information identified in the Complaint and discussed here is material to

26   shareholders in rendering a decision regarding a proposed merger and the failure to disclose this

27

28                                                      12
     **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY
     INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES**

information cannot be remedied through monetary damages after the consummation of the Merger. *See St. Louis Police Ret. Sys. v. Severson*, No. 12-CV-5086 YGR, 2012 U.S. Dist. LEXIS 152392, at *16-17 (N.D. Cal. Oct. 23, 2012) ("disclosure deficiencies cannot be remedied effectively by an 'after-the-fact damages' case. Thus, '[i]t is appropriate for the court to address material disclosure problems through the issuance of a preliminary injunction that persists until the problems are corrected.'") (internal citations omitted); *see also Brown*, 2010 U.S. Dist. LEXIS 60863, at *69-70 (if a Proxy discloses valuation information, "[the defendant] has a duty to fully and accurately disclose information related to the valuation."); *Maric Capital Master Fun, Ltd. v. Plato Learning, Inc.*, 11 A.3d 1175, 1176-79 (Del. Ch. 2010) (ordering corrective disclosure concerning financial advisor's WACC calculation and selection of discount rates in connection with discounted cash flow analysis, and the extent of actual discussions between target company's CEO and acquiring company concerning post-merger employment); *In re Atheros Commc'ns, Inc. S'holder Litig.*, No. 6124-VCN, 2011 Del. Ch. LEXIS 36, at *26-27 (Del. Ch. Mar. 4, 2011) ("Before shareholders can have confidence in a fairness opinion or rely upon it to an appropriate extent, the conflicts and arguably perverse incentives that may influence the financial advisor in the exercise of its judgment and discretion must be fully and fairly disclosed."); *Arnold v. Soc'y for Sav. Bancorp*, 650 A.2d 1270, 1280 (Del. 1994) ("once defendants traveled down the road of partial disclosure of the history leading up to the Merger and used the vague language described, they had an obligation to provide the stockholders with an accurate, full, and fair characterization of those historic events.").[12]

---

[12]     Opinions from the Delaware Court of Chancery are particularly influential for purposes of determining what types of information are material to shareholders and must be disclosed in a recommendation statement, as "Delaware courts have become specialists in the field of corporate law, and decisions of the Delaware courts are often 'instructive' on corporate matters." *Nichting v. DPL Inc.*, No. 3:11-cv-141, 2011 U.S. Dist. LEXIS 76739, at *16 n.14 (S.D. Ohio July 15, 2011) (citing *McCarthy v. Middle Tenn. Elec. Membership Corp.*, 466 F.3d 399, 409 (6th Cir. 2006)). Indeed, the Delaware courts apply the same standard for materiality as federal courts. *See In re Tele-Commc'ns, Inc. S'holders Litig.*, No. 16470, 2005 Del. Ch. LEXIS 206, at *13 (Del. Ch. Dec. 21, 2005) ("Delaware follows the federal standard articulated [by the U.S. Supreme Court] in *TSC Industries v. Northway* for determining materiality.")

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES**

Accordingly, Plaintiff has established that he "would suffer irreparable injury in the absence of injunctive relief designed to remedy any false or misleading information in [D]efendant's Proxy Statement[]." *Lone Star Steakhouse & Saloon, Inc.*, 148 F. Supp. 2d at 1150.

## IV. THE BALANCE OF EQUITIES TIPS IN PLAINTIFF'S FAVOR AND AN INJUNCTION TO MAKE CORRECTIVE DISCLOSURES IS IN THE PUBLIC INTEREST

Given that Plaintiff only seeks an order enjoining the June 19 Vote until Defendants provide Verifone shareholders with the material information identified above, the balance of equities heavily weigh in Plaintiff's favor and an injunction is in the public's interest. In an opinion granting a motion for a preliminary injunction based upon materially incomplete and misleading SEC filings made in connection with a merger transaction, a district court in this circuit stated:

> If the Court orders corrective disclosures, Defendants would only incur the expense of making those disclosures. An injunction ordering corrective disclosures is also in the public interest, as it prevents an uninformed shareholder vote. Thus, the Court finds that the potential threat of an uninformed vote in this case presents an irreparable harm, that the balance of equities tips in Plaintiffs' favor, and that the proposed injunction to make corrective disclosures is in the public interest.

*Allergan, Inc. v. Valeant Pharm. Int'l, Inc.*, No. SACV 14-1214 DOC(ANx), 2014 U.S. Dist. LEXIS 156227, at *51 (C.D. Cal. Nov. 4, 2014). And as another district court stated in analogous circumstances:

> [P]laintiff is asking the court to order defendant to make a corrective disclosure filing with the SEC. Such a filing would take a brief amount of time to prepare and file and would involve little expense. The hardship to defendant should the injunction issue is thus minimal. Finally, the court finds that the requested injunction would not be adverse to the public interest. Indeed, the public interest always lies with the truth. Again assuming the existence of materially misleading information, a full disclosure of such information, prior to any vote based thereon, will best serve the shareholding public.

*Lone Star Steakhouse & Saloon, Inc.*, 148 F. Supp. 2d at 1150.

As explained by the Supreme Court, "in corporate control contests the stage of preliminary injunctive relief, rather than post-contest lawsuits, is the time when relief can best be given." *Piper v. Chris-Craft Indus.*, 430 U.S. 1, 42 (1977) (internal quotation marks omitted). Without full and

1    adequate disclosure, Plaintiff and the other investors must make a grossly uninformed decision

2    whether to vote in favor of the Proposed Merger.  In contrast, postponing June 19 Vote to require

3    additional disclosure would minimally delay the transaction, **if at all**, for only so long as would be

4    necessary for shareholders to digest the newly disclosed information.  The injunction would not

5    be indefinite, and the shareholder vote and Proposed Merger could still take place.

6    **V.    NO SECURITY IS NECESSARY**

7           Federal Rule of Civil Procedure 65(c) provides that "[t]he court may issue a preliminary

8    injunction or a temporary restraining order only if the movant gives security in an amount that the

9    court considers proper to pay the costs and damages sustained by any party found to have been

10   wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).  However, "Rule 65(c) invests the

11   district court with discretion as to the amount of security required, *if any*. [T]he likelihood of

12   success on the merits, as found by the district court, tips in favor of a minimal bond or no bond at

13   all." *2Die4Kourt v. Hillair Capital Mgmt., LLC*, 692 Fed. Appx. 366, 369 (9th Cir. 2017) (internal

14   citations omitted) (internal quotation marks omitted).  As shown above, Plaintiff has demonstrated

15   a success on the merits.

16          The district court may also dispense with the filing of a bond when it concludes there is no

17   realistic likelihood of harm to the defendant from enjoining his or her conduct.  *Jorgensen v.*

18   *Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003).  Because Plaintiff merely seeks a brief injunction to

19   enjoin the June 19 Vote for only so long as necessary to allow Verifone shareholders to receive

20   and absorb the supplemental disclosures, Defendants will suffer minimal, if any, financial harm.

21   Accordingly, Plaintiff respectfully submits that no bond, or at most, a nominal bond, should be

22   required.[13]

23   ---

24   [13]    Indeed, Defendants contemplated that the June 19 Vote may be adjourned for various
reasons and such an adjournment is not a basis to terminate the Proposed Merger. *See* Merger

25   Agreement, definition of "Stockholders Meeting" (p. 78) and Section 7.4. Among the reasons
recognized for an acceptable adjournment is a requirement by applicable law, order of a

26   governmental entity or a request by the SEC, or if the Board changes its recommendation and
disseminates new information (e.g., if a superior offer is made).  Thus, a modest adjournment of

27   the vote is already baked into this process and granting this motion will have no consequences to

28

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY**
**INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES**

4:18cv2926YGR

1

## **CONCLUSION**

2  For the reasons set forth above, Plaintiff respectfully requests that the Court grant his

3  [Proposed] Order, concurrently filed herewith, enjoining the June 19 Vote until Defendants

4  disclose the material information discussed above.

5  Dated: May 25, 2018

Respectfully submitted,

6

7  **FARUQI & FARUQI, LLP**

8  **OF COUNSEL:**

By: _/s/ Benjamin Heikali_
Benjamin Heikali, Bar No. 307466

9  **FARUQI & FARUQI, LLP**
James M. Wilson, Jr.

10866 Wilshire Blvd., Suite 1470
Los Angeles, CA 90024

10  685 Third Avenue, 26th Floor
New York, NY 10017

Tel.: (424) 256-2884
Fax: 424.256.2885

11  Tel.: (212) 983-9330
Fax: (212) 983-9331

Email: bheikali@faruqilaw.com

12  Email: jwilson@faruqilaw.com

_Attorney for Plaintiff_

13  _Attorneys for Plaintiff_

14

15

16

17

18

19

20

21

22

23

24

25

26  ─────────────────
the Proposed Merger.www.sec.gov/Archives/edgar/data/1312073/000119312518111709/d546

27  581dex21.htm

28

16

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY
INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES**

4:18cv2926YGR